MARY FRANCES PREVOST
Attorney at Law
State Bar No. 157782
Emerald Plaza
402 West Broadway, Suite 950
San Diego, California 92101
Tel: (619) 692-9001
Fax: (619) 255-0726
Email: mfprevost@aol.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

TRUMAINE JOHNSON,                                  )    Case No. 10-CV-0504-LAB (NLS)
                                                   )
                    Plaintiff,                     )
v.                                                 )    **PLAINTIFFS' OPPOSITION TO
                                                   )    MOTION TO DISMISS PLAINTIFF'S
UNIVERSITY OF SAN DIEGO; MARY E.                   )    FIRST AMENDED COMPLAINT;
LYONS, as an individual and President of           )    MEMORANDUM OF POINTS AND
University of San Diego; CHARLES BATEY, as         )    AUTHORITIES IN SUPPORT
an individual and   EEO/Affirmative Action         )    THEREOF**
Director of University of San Diego; BILL GRIER,   )
as an individual and head coach of the University  )    Date:        No appearance
of  San  Diego  Toreros  Basketball  Team;         )    Judge:       Hon. Larry A. Burns
SERGEANT BAKER, as an individual and Public        )    Courtroom:   9
Safety Officer of University of San Diego; JASON   )    Filed:       March 9, 2010
BAKER, as  an  individual  and  Public  Safety     )    Trial:       None Set
Officer of University of San Diego; SAN DIEGO      )
POLICE OFFICER JOHNSON, ID#6594; CITY              )
OF SAN DIEGO, and DOES 1-25, inclusive.            )
                                                   )
                    Defendants.                    )
                                                   )
                                                   )
_____      )

**COMES NOW PLAINTIFF** who submits the following Points and Authorities in Opposition to

Defendants' Motion to Dismiss the Complaint:

///

///

**TABLE OF CONTENTS**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Memorandum of Points and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   Factual Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  Standard for Dismissal Pursuant to F.R.C.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . .5

IV.   Plaintiff's First, Third, Fourth, Sixth, Eighth and Ninth Counts Should Survive. . . . . . . . 6

V.    The Second Cause of Action Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VI.   The Fifth Cause of Action Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

VII.  The Sixth Cause of Action Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VIII. The Cause of Action Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**TABLE OF AUTHORITIES**

**CASES**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Back v. Hastings Union Free School District,* 365 F.3d 107 (2d Cir. 2004). . . . . . . . . . . . . . . . . 8

*Balistreri v. Pacifica Police Department*, 901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . .6

*Beliveas v. Caras*, 873 F.Supp. 1393 (CD CA 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bernheim v. Litt*, 79 F.3d 318 (2nd Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 6

*Burnham v. Superior Court of California*, 485 U.S. 604 (1990). . . . . . . . . . . . . . . . . . . . . . . . .6

*Cecere v. County of Westchester*, 814 F.Supp. 378 (S.D.N.Y. 1993). . . . . . . . . . . . . . . . . . . . . . 6

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Henderson v. Fisher*, 631 F.2d 1115 (3rd Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Jackson v. Metro Edison Co.*, 419 U.S. 345 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Johnson v. Cullen*, 925 F.Supp 244 (D.Del. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lee v. Murphy,* 844 F.2d 628, 634 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Lindsey v. Admiral Ins. Co.*, 804 F. Supp. 47 (N.D.Cal. 1992). . . . . . . . . . . . . . . . . . . . . . . . 5

*McGrath v. Dominican College of Blauvuett*, 672 F.Supp.2d 477 (   ). . . . . . . . . . . . . . . . . . . 8,10

*Payton v. Rush-Presbyterian St. Luke's Med. Ctr.*, 184 F.3d 623 (1999). . . . . . . . . . . . . . . . . . 7

*Philip v. University of Rochester*, 316 F.3d 291 (2nd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . .11,12

*Rojas v. Alexander's Dep't Store, Inc.,* 654 F.Supp 856 (E.D.N.Y.1 986). . . . . . . . . . . . . . . . . . .8

*SEC v. Cross Fin'l Services, Inc.*, 908 F.Supp 718 (CD CA 1995). . . . . . . . . . . . . . . . . . . . . . . .6

*Stokes v. Northwestern Memorial Hopsital*, 1989 U.S. Dist. LEXIS 8543 (N.D.Ill. July 20, 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Strother v. Southern California Permanente Medical Group*, 79 F.3d 859 (9th Cir. 1996). . . . . . .5

*Swierkiewicz v. Sorema,* 534 U.S. 506 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Taylor v. X,* 880 F.2d 1045 (   ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*United States v. White*, 893 F.Supp 1423, (CD CA 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Warwick v. Univ. Of the Pacific,* 2008 U.S. Dist. LEXIS 97207 (N.D.C.A. 2008). . . . . . . . . . . .9

*Yazoo County Industrial Development Corp, et al. v. Suthoff, et al.*, 454 U.S. 1157 (1982). . . . . 6

10-CV-0504-LAB (NLS)

**CASES CONTINUED,**

*Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675 (9th Cir. 1984). . . . . . . . . . . . . 9

**STATUTES**

42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11,12

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7,8,10

42 U.S.C. § 1986. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

F.R.C.P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,11

**I.**

**INTRODUCTION**

Defendants, in their introduction, give a two-paragraph synopsis of what is well known as the 20-year evolution of racial discrimination at the University of San Diego culminating with the false allegations of criminal conduct by African-American student Trumaine Johnson leading ultimately to the school's terminating his NCAA basketball scholarship. Thereafter, defendants list what they believe are insufficient factual allegations to maintain this complaint.

**II.**

**FACTUAL ALLEGATIONS**

Racial discrimination goes back more than 20 years at USD. Indeed, the school nearly lost its accreditation in 1990 because it was so homogenous. In 1990, representatives of the Irvine Foundation, a philanthropic nonprofit organization promoting social equity, declared that the University of San Diego was a homogenous school in dire need of funding to expand diversity. In 1991, USD received the very first Irvine Foundation grant to launch a campus-wide cultural diversity program. It was the first of many Irvine Foundation grants the school would received. Complaint ¶18. But by 2000, nine years after USD received its first Irvine Foundation Grant, hate crimes were rampant on campus and reported regularly in the news. Complaint ¶19.

In 2005, the USD Committee on Inclusion and Diversity created goals of creating a culture of inclusion, and recruiting and retaining diverse students. Statistics show that in 2009, 18 years after the first $1 million Irvine Grant was given to USD, the black student population barely exceeded two percent. Notwithstanding evidence to the contrary, USD persists in filling out Part Five of it's yearly tax returns claiming it has nondiscriminatory policies toward diverse students. Complaint ¶20.

In December 2008, Mr. Johnson was accused of vandalizing a white USD student's automobile. Allegations were made that witnesses had seen a group of "black" basketball players walking near the white student's vandalized car at some point. Mr. Johnson was temporarily suspended from the USD basketball team for "rules violations" by defendants USD and Grier. The "rules violation" was the unsubstantiated allegation that Mr. Johnson had kicked

a white student's car.  A later investigation proved that the footprint on the car did not match Mr. Johnson's footprint.  Mr. Johnson was exonerated. Complaint ¶20-22.

As if being falsely accused of a crime wasn't ugly enough, USD and Grier added fuel to the fire by issuing a press release announcing Mr. Johnson's suspension for "rules violations" to local and national news agencies.  Grier told the press that Mr. Johnson's suspension was for "behavior  unbecoming a USD student athlete", even though the allegation that Mr. Johnson had kicked a *white* student's car had been fabricated. Complaint ¶23.

USD's Office of Public Safety, who employs Defendant Sgt. Baker - the man that later assaulted, battered and falsely arrested Mr. Johnson - was the investigatory agency in this racially-motivated suspension.  Mr. Johnson was ultimately exonerated, but not before he was suspended from the USD basketball team and defamed in the local and national print and broadcast media based on a press releases issued by USD and Grier stating he had been suspended for "rules violations." Complaint ¶24.

On February 8, 2009 Mr. Johnson was unlawfully stopped, racially profiled, tackled to the ground by Defendant Baker, kneed in the back, pepper sprayed in the face and then wrongfully arrested by Baker.  Mr. Johnson begged for medical attention after Baker pepper sprayed him. Baker refused to provide Mr. Johnson water with which to flush his burning eyes.  Baker called the San Diego Police Department and caused a citizen's arrest to be made against Mr. Johnson, claiming Mr. Johnson assaulted him. More than seven (7) San Diego police units containing some 11 San Diego police officers, and a fire truck, rolled up on the injured basketball player, Mr. Johnson.  Defendant San Diego Police Officer Johnson arrested Plaintiff Johnson for assaulting Baker at Baker's insistence.  USD student and fellow basketball player Matt Dorr witnessed the entirety of Baker's attack on Plaintiff  Johnson.  Dorr informed the SDPD officers that Defendant Baker's story was fabricated. Complaint ¶25-26.

Matt Dorr, the basketball player who was with Mr. Johnson when Baker attacked Johnson,  demanded that SDPD officers and Baker take his statement but they refused. A USD professor, who had caught part of the incident on video tape, also requested to make a statement to the police.  No one would take these witnesses statements.  Complaint ¶27.

Mr. Johnson was handcuffed, placed in the back of a police cruiser, taken to the police station, booked on criminal charges of criminal assault, and forced to pay bail to secure his release.  Baker fabricated events to justify the unlawful attack he had just perpetrated against Mr. Johnson by telling police officers that Mr. Johnson had assaulted him and admitted to having a weapon, which Johnson  never said and never had. Complaint ¶28.

Mr. Johnson was again suspended by Coach Grier for violating "unspecified team rules." Again, USD and Grier published this false statement in a press release which then was republished in local and national print and broadcast media.  Matt Dorr, who was with Johnson when Baker attacked him, also violated "team rules."  Dorr is *white.*  Dorr was *not* suspended. The Office of the City Attorney which prosecutes misdemeanors in the City of San Diego *declined to prosecute* the case after reviewing police reports.  Complaint ¶30-31.

Both Mr. Johnson and his eye witness, Matt Dorr, filed complaints with USD claiming the attack by Defendant Baker and Plaintiff's subsequent arrest, was racially motivated.  On February 18, 2009 Defendant, through its Equal Employment Opportunity/Affirmative Action Director Defendant Charles Batey, officially rejected Mr. Johnson's complaint that the security guard's attack was racially motivated. On the same date that Mr. Johnson was attacked by USD's Baker, the school published on the internet a list of crimes that occurred on campus the same day Mr. Johnson was arrested.  None of the non-black student who actually committed crimes were arrested.  None.  Complaint ¶32.

    A.    Two students were found harboring weapons, ammunition magazines and a BB gun. The students were not turned over to the SDPD or charged with crimes. The case was listed as being disposed of by the school's "judicial review".  The student suspects were not African-American.

    B.    A battery of one student against another was disposed of by "judicial referral", not arrest.  The student perpetrator was not African American.

    C.    A student who possessed alcohol as a minor, a violation of the California Business and Professions Code, was disposed of as a "judicial referral., not arrest. The student was  not African-American.

D.      Another minor whose blood alcohol content was determined to be a .116, was disposed of as a "judicial referral" not as an arrest. The student was not African American.

E.      A student determined to be drunk in public after falling out of a taxi cab onto the street (a violation of Penal Code sec. 647(f)), was disposed of as a "judicial referral", not as an arrest. The student was not African American.

F.      Campus security guards stopped a motor vehicle carrying a group of students.  A strong odor of marijuana emanated from the car.  Inside the car, guards found 6.6 grams of marijuana, two cans of beer, four glass marijuana pipes, and one large marijuana pipes.  The case was handled as a "judicial referral", not as an arrest. The students were not African American.

On February 23, 2009 - five days after Mr. Johnson was attacked by Baker -  USD officially released Mr. Johnson from his basketball scholarship, claiming that he had sought such release.  Mr. Johnson did not seek a release. USD then sent out a press release to all news local and nationwide news organizations further perpetrating this fraud and defamation.  This occurred within days of Mr. Johnson making his complaint of racial discrimination to the school, and five days after Defendant Batey determined that the attack and arrest of Plaintiff was not racially motivated.

As this Court can see from Exhibit 1, attached herewith, the Defendants' recitation of the "facts" omit a substantial portion of the "facts" pleaded in the Complaint.  This will be addressed further in the separate sections of the Motion to Dismiss.

**III.**

**STANDARD FOR DISMISSAL PURSUANT TO F.R.C.P. 12(b)(6)**

A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief.  *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 866(9th Cir. 1996).  Motions to dismiss for failure to state a claim are generally disfavored.  *Lindsey v. Admiral Ins. Co.*, 804 F.Supp. 47, 52 (N.D.Cal. 1992).

Recovery may even appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Bernheim v. Litt*, 79 F.3d 318, 324 (2nd Cir. 1996). The Court must determine whether the facts alleged, if true, would entitle Plaintiffs to some sort of legal remedy. Unless the answer is unequivocally "no", the motion must be denied. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *SEC v. Cross Fin'l Services, Inc.*, 908 F.Supp. 718, 726-727 (CD CA 1995); *Beliveas v. Caras*, 873 F.Supp. 1393, 1395 (CD CA 1995); *United States v. White*, 893 F.Supp. 1423 (CD CA 1995).

A § 12(b)(6) motion is proper only where there is no cognizable legal theory or the absence of facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

The purpose of the § 12(b)(6) motion is to test the sufficiency of the pleading, not disputed facts or the merits of the case. *Johnson v. Cullen*, 925 F.Supp. 244, 250 (D.Del. 1996). Where there are issues of law and fact which are mixed, summary judgment s appropriate.

If a party submits all information available to that party without discovery, and it supports the inference that a legal standard has been violated, it may be necessary to authorize at least limited discovery to divulge whether or not dismissal of the complaint at this stage would constitute a miscarriage of justice. *Cecere v. County of Westchester*, 814 F.Supp. 378, 386 (S.D.N.Y. 1993); *Burnham v. Superior Court of California (Marin)*, 485 U.S. 604, 639, fn. 13 (1990); *Yazoo County Industrial Development Corp, et al. v. Suthoff, et al.*, 454 U.S. 1157, 1160 (1982).

**IV.**

**PLAINTIFFS' FIRST, THIRD, FOURTH, SIXTH, EIGHT AND NINTH COUNTS SHOULD SURVIVE**

In Section A of their Argument beginning on Page 7, Defendants argue that the First, Third, Fourth, Sixth, Eighth and Ninth Counts cannot be maintained because individual defendants are not state actors. This is incorrect. For the purposes of these claims, Defendants are indeed state actors.

Although private actors acting alone do not satisfy *Section 1983*'s state action requirement, plaintiff points out that private parties may be liable under *§ 1983* if they act in concert with state officials. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152,(1970).

A private entity and its employees may be sued under 42 U.S.C. §1983 under the "public function test." The public function theory applies only to the "exercise by a private entity of powers traditionally exclusively reserved to the state." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). Hence, if a private university and its employees perform a function traditionally exclusively reserved to the state, then there is "state action." There was "state action" here.

USD is a state actor because the City of San Diego has handed over enforcement of misdemeanor crimes to USD security. Investigation of crime is a power "traditionally exclusively reserved to the state."

According to USD's website:

> The University of San Diego is a private university and is considered private property. The USD Department of Public Safety is charged with the primary responsibility of maintaining a safe campus environment at USD. The authority to enforce University of San Diego policy is established by the Board of Trustees. A written agreement is also granted to USD Public Safety by the San Diego Police Department (SDPD) through a Memorandum of Understanding that permits USD Public Safety to investigate misdemeanor crimes occurring on USD property. However, the San Diego Police Department is the primary reporting and investigating agency for any violent crime that might occur on USD property.

The San Diego Police Department, through a memorandum of understanding, relinquished its historically exclusive right to investigate misdemeanor crimes on USD's campus to the USD security guards.

The instant case is remarkably similar to *Payton v. Rush-Presbyterian St. Luke's Med. Ctr.,* 184 F.3d 623 (1999). There, an African-American student was beaten and arrested by security guards. He sued under 42 U.S.C. §1983. The District Court dismissed per 12(b)(6). The case was reversed because the "special police officers" were state actors exercising police powers *delegated* to them.

In *Stokes v. Northwestern Memorial Hospital*, 1989 U.S. Dist. LEXIS 8543, 1989 WL 84584 (N.D. Ill. 1989) the Court held that where the state *delegates* police powers to otherwise private actors who exercise these powers, the otherwise private actors subject themselves to liability for civil rights violations.

Additionally, in *Henderson v. Fisher*, 631 F.2d 1115, 1117-18 (3rd Cir. 1980) state action was found where campus security officers were delegated the "same powers which the municipal police force of Pittsburgh possesses" save for stricter geographic restrictions were state actors.

Other courts to consider this issue have reached similar conclusions to *Stokes.* In *Rojas v. Alexander's Dep't Store, Inc.,* 654 F. Supp. 856, 858 (E.D.N.Y. 1986), a "special patrolman" appointed pursuant to a New York City ordinance nearly identical to Chicago's was subject to *§ 1983* liability.

The underlying notion in these cases is that if the state cloaks private individuals with virtually the same power as public police officers, and the private actors allegedly abuse that power to violate a plaintiff's civil rights, that plaintiff's ability to claim relief under *§ 1983* should be unaffected.

The Third Circuit's decision in *Henderson, supra* also offers some guidance. In *Henderson*, a plaintiff brought suit under § 1983 against the University of Pittsburgh campus police. Although the University of Pittsburgh is a public institution, the Third Circuit noted that the Pennsylvania legislature's delegation to the campus police of "the very powers which the municipal police force possesses" buttressed their conclusion that the campus police act under color of state authority. *See Henderson*, 631 F.2d 1115, 1118.

Plaintiff did not plead the special police officer language in the Complaint, nor did he identify the USD memorandum of understanding.  That can be done easily with leave to amend.

As to individual liability, each actor is still liable.  In *McGrath v. Dominican College of Blauvuett*, 672 F.Supp.2d 477 (.D.N.Y. 2009)  individual defendant liability was found because of the  personal involvement in the deprivation of this right by the individual defendants.

In *Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107 (2d Cir. 2004), the Second Circuit set forth several methods by which personal involvement may be established under § 1983. The *Back* Court explained, in pertinent part: Personal involvement can be shown by: evidence that . . . the defendant[s], after being informed of the violation through a report or appeal, failed to remedy the wrong . . . or the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

In Warwick v. Univ. of the Pac., 2008 U.S. Dist LEXIS 97207 (N.D.C.A. 2008), the Court stated:

> An individual defendant is liable for money damages under 1983 only if the defendant personally participated in or otherwise proximately caused the unconstitutional deprivations of which the plaintiff complains. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).
>
> To establish individual liability, Plaintiff must allege one of the following: (1) Defendant personally participated in or ordered the constitutional violation; (2) Defendant, acting in a supervisory capacity, failed to train properly or supervise personnel, resulting in the violation; (3) Defendant was responsible for an official policy or custom which caused the violation; or (4) Defendant knew of the violation and failed to prevent it. *Taylor*, 880 F.2d at 1045; *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

Defendant Coach Grier falls into categories (1) and (4) in that he participated in both false allegations against Plaintiff by suspending him each time, sending out false and defamatory press releases to the national news media and, not suspending the white student who accompanied Plaintiff on the night he was attacked, and ultimately causing his termination from the team and, hence, the loss of his scholarship.

Defendant security officer Baker clearly falls into category (1) in that he personally participated in the constitutional violation by attacking Plaintiff, falsifying his report, providing false information to the San Diego Police Department, and ultimately was the catalyst for the last suspension and ultimate dismissal from the basketball team.

Defendant EEOC director Batey falls into categories (1) and (4) in that when confronted with the allegations of racial discrimination by both the black student - Plaintiff Johnson - and his white friend - Matt Dorr - he simply swept them under the table, denied them, and supported the campus security officer.

Defendant President Lyons falls into all categories.  Defendant security guard Baker's last job before coming to work at USD was as a zookeeper at the San Diego Zoo. When hired, he racially profiles a black student, beats him to the ground, pepper sprays him while his companion is screaming at him to stop, and then falsifies facts to support his arrest, smacks directly of failure to train and supervisor.

Lyons is also liable for maintaining a custom of segregation at the school.  Complaint

Non-Black students get judicial review, and black students get arrested and dismissed. Complaint    As to categories (1) and (2), Lyons knew of the unlawful arrest, knew of the impending administrative dismissal of the schools' star basketball player, and acquiesced in it. In short, she didn't protect Trumaine Johnson, she encouraged the ultimate violation: his racially motivated dismissal based on retaliation.

Mary Lyons has been the president of the school since July 2003.  The history of USD's attempt at diversity is abysmal.  Personal involvement in a 42 U.S.C.S. § 1983 deprivation can be shown by: evidence that the defendants, after being informed of the violation through a report or appeal, failed to remedy the wrong or the defendant exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *McGrath v. Dominican College of Blauvuett*, 672 F.Supp.2d 477, 490 (S.D.N.Y. 2009).

The *McGrath* case applies equally to all defendants.

A person has the right to a non-discriminatory police investigation. *McGrath*, *supra*, 672 F.Supp.2d at 490.  Courts have upheld §1983 claims against police based upon discriminatory failures by officials to conduct investigations.  And failure to take action on the part of those in senior policy making roles constitutes an official policy.

## V.

## THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED.

Plaintiff submits.

## VI.

## THE FIFTH CAUSE OF ACTION SHOULD NOT BE DISMISSED.

Defendants seek to dismiss Plaintiff's Fifth Cause of Action for invidious discrimination pursuant to 42 U.S.C. §1981.  What defendants highlight as an "important" issue is that there are no facts whatsoever to conclude that race had to do with the false allegations of crimes, the assault, battery and false arrest of him, and his ultimate termination of his basketball scholarship.

Trumaine Johnson is walking with a white basketball player, Matt Dorr.  Black player is attacked by school police.  White player is not attacked by school police.  Black player is arrested.  White player is not arrested.  Black player is suspended for "rules violations.  White

player is not suspended for rules violations." Black player files complaint with EEOC director. White student files complaint on black player's behalf to EEOC director.  EEOC rejects complaint. Black player's scholarship is terminated.  White player's scholarship is not terminated.  School arrested black player on night in question and not white player.  School did not arrest a multitude of non-black students the same week that the black student was arrested for "walking while black", yet did not arrest who possessed dangerous drugs, dangerous weapons and/or who were under the influence.  Black player=arrested.  Non-black students=judicial review/no arrest. Prosecutors reject filing charges.

In *Swierkiewicz v. Sorema*, the U.S. Supreme Court held that a Title VII plaintiff need not set forth circumstances supporting an inference of discrimination in order to survive a Rule 12(b)(6) motion. *Id.* at 512-13. The Court found sufficient plaintiff's detailed account of the events leading up to his termination, which included the ages and nationalities of some of the decision makers, and his claim that his termination was motivated by age and national origin. *Id.* at 514.

But here, there are no facts to conclude that race just *might* be a factor here?  Plaintiff disagrees.

In *Phillip v. Univ. of Rochester*, 316 F.3d 291 (2nd Cir. 2003) Three African-American students sued defendants after they were ordered to leave the lobby of the university library by a security officer, where they were gathered with some friends. One student's identification was taken by the officer. When the students attempted to leave, the officer blocked their vehicle and called the police. The students were arrested, spent the night in jail, but later all charges against them were dismissed. The district court dismissed their claim under the equal benefit clause, 42 U.S.C.S. § 1981(a), on the ground that they had failed to allege a state action. On appeal, the court vacated the court's judgment. The court determined that § 1981(a) did not require a state action, given the clear language of 42 U.S.C.S. § 1981©. The court also held that the students adequately plead racial animus to survive the Fed. R. Civ. P. 12(b)(6) because their complaint alleged that they were singled out of a group that also contained non-minority students and described the officers conduct in great detail, including the confiscation of one student's

identification and the refusal to allow them to leave an area where they were peaceably assembled.

The Court in *Phillips* held that no heightened pleading requirement for civil rights complaints alleging racial animus is necessary, and claims have been held to be sufficiently pleaded when the complaint stated simply that the plaintiffs "[were] African-Americans, describe[d] defendants' actions in detail, and allege[d] that defendants selected [plaintiffs] for maltreatment 'solely because of their color.'" *Id*. At 298.

Here, Plaintiff was singled out for a false complaint of kicking a car because he was black. Then, when walking with a white student, he was singled out, assaulted, arrested, suspended and his basketball scholarship was terminated. No criminal charges were filed. Non-white students who committed serious crimes were never arrested.  They were dealt with by judicial review. Complaint

This case mimics the facts in *Phillips* above.  Plaintiff has sufficiently pleaded his 42 U.S.C. §1981 claim.

## VII.

### THE SIXTH CAUSE OF ACTION SHOULD BE DISMISSED

Plaintiff submits.

## VIII.

### THE TENTH CAUSE OF ACTION SHOULD NOT BE DISMISSED ENTIRELY

Defendants argue that Plaintiff has not plead facts sufficiently to show "threats, intimidation, or coercion."  Plaintiff submits on this issue as to defendant Lyons, but argues that that sufficient facts are pleaded to sustain this cause of action as to Baker, Grier and Batey.

Arrest is threatening, intimidating and coercive.  In *Butler*, *ante*, the court said the summary judgment record revealed  that the officers interfered with Plaintiff's constitutional rights by "threats, intimidation, or coercion," since the officers seized Plaintiff. *Butler v. City of Sacramento*, 2007 U.S. Dist. LEXIS 60006, 2007 WL 2275218, at 7 (E.D. Cal. 2007) (holding that officers used "threats, intimidation, or coercion" when they handcuffed and detained plaintiff).

As to Batey, the EEOC director whose duty was to ensure that Plaintiff was protected, did exactly the opposite.  He had two eye witness accounts of the events involving Dorr, Plaintiff and Baker. Instead of taking them seriously, he dismissed this student who had just been attacked, brutalized, kicked, pepper sprayed, and falsely arrested while the white student he was with was left alone. Was he not intimidating?

As to Grier, after just the first false allegation of criminal conduct leveled at Plaintiff, he suspended him and broadcast false statements about him.  Essentially Grier decided the black boy was guilty before being proved innocent. Then, he asked Plaintiff - repeatedly - if he wanted to be released from his contract with USD and go play elsewhere.  Plaintiff said "no." That happened several times until the evening when Plaintiff was assaulted.  Grier met with Plaintiff and again told him he should go elsewhere.  Plaintiff again, said "no."  But Grier announced that Plaintiff had indeed sought a release.  That was a lie.[1]

## IX.

### THE TENTH CAUSE OF ACTION SHOULD NOT BE DISMISSED

The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct.  *KOVRTV, Inc. v. Superior Court* (1995) 31 Cal. App. 4th 1023, 1028.

"Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.*"  Cervantez v. J.C. Penney Co.* (1979) 24 Cal. 3d 579, 593 .

"Manifestly, the standard for judging outrageous conduct does not provide a 'bright line' rigidly separating that which is actionable from that which is not. Indeed, its generality hazards a case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshold, and standards of civility. The process evoked by the test appears to be more intuitive than analytical . . . ." *Yurick v. Superior Court,* 209 Cal. App. 3d 1116, 1128 (1989).

[1]These facts are not presently pleaded in the complaint, but given leave to amend, will be.

*Miller v. National Broadcasting Co.*, 187 Cal. App. 3d 1463 (1986) held that unauthorized entry of a television camera crew in a heart attack victim's bedroom could be classified as "highly offensive".  Is not the attack, suspension and termination of a black student athlete based on his race at least as outrageous as finding a camera watching you recuperate from your bedroom?

California law recognizes racial slurs may constitute "extreme and outrageous conduct". *Robinson v. Hewlett-Packard Corp.*, 183 Cal. App. 3d 1108 (1986). The California courts have also  been generous in permitting claims of racial slurs to proceed. See *Alcorn v. Anbro Eng'g., Inc.*, 2 Cal. 3d 493, 468 (1980) ("Although it may be that mere insulting language, without more, ordinarily would not constitute extreme outrage, the aggravated circumstances alleged by plaintiff seem sufficient to uphold his complaint as against defendants' general demurrer.").

Of course, here no one used the "N" word.  By the complaint sufficiently pleads the inference that the attack on Plaintiff, his arrest, suspension, and termination from the basketball team and the loss of his scholarship was racially motivated.  At least Matt Dorr, who witnessed the attack by Baker on Plaintiff, though so and made a complaint to the EEOC director.

Invidious discrimination is so grotesque that the U.S. Supreme Court ruled that one making a §1981 claim against a wholly private entity need not plead state action. See, *Swierkiewicz v. Sorema, supra.*

Plaintiff has sufficiently pleaded intentional infliction of emotional distress by each and every actor in the complaint sufficient to survive the 12(b)(6).

## X.

### THE TWELFTH  CAUSE OF ACTION SHOULD NOT BE DISMISSED

Defendants complaint that they owed Trumaine Johnson no duty and, hence, the Court should grant their 12(b)(6)as the claim for negligence.

Trumaine Johnson had a right to be free of racial discrimination in his education. All defendants had a duty, under the Fourteenth Amendment's Equal Protection Clause, to ensure his right.  Invidious discrimination is so grotesque that the U.S. Supreme Court ruled that one making a §1981 claim against a wholly private entity need not plead state action. See,

*Swierkiewicz v. Sorema, supra.*

All students in both public and private institutions have the right to be free of invidious discrimination in education. *Montiero v. Tempe Union High Sch. Dist.*, 158 F.3d. 1033 (9th Cir. 1998).

### XI.

### THE THIRTEEN CAUSE OF ACTION SHOULD BE DISMISSED

Plaintiff submits.

### XII.

### THE THIRTEEN CAUSE OF ACTION SHOULD BE NOT BE DISMISSED

Defendant Lyons seeks an order of this Court dismissing the claim for Negligent Hiring/Supervision.   In support for this proposition, Lyons claims that "the only real reference" to Lyons in the complaint accusing her only of hiring him and fails to identify how his hiring was negligent.

Defendant Baker's last job prior to working as a security guard at racially homogenous school was as a zookeeper at the San Diego Zoo. The vision of this man attacking young, black, Trumaine Johnson conjures of the picture of the zookeeper guarding the monkey cage.

### CONCLUSION

The facts not pleaded thus far, and can be upon a granting of leave to amend, include that Plaintiff's mother filed a complaint to the head of the Dean of Student Affairs after the first incident of racial profiling when Mr. Johnson was falsely accused of vandalism on a white student's car. She then filed a complaint with human resources. She followed up - repeatedly.

Black players were historically drug tested, at least the four black players that Coach Grier didn't like.  Matt Dorr, a white player, was never drug tested during the time that Plaintiff attended the school. Mr Johnson was repeatedly asked if he wanted to get a "release" from his contract with the school and go somewhere else after his first suspension by Grier.  This was a constant peppering of "Why don't you just give us a release."  Wanted Plaintiff gone, and Grier asked him repeatedly to sign a release." Each and every time, Mr. Johnson said "no."  In fact, when Mr. Johnson was terminated after his mother's numerous complaints to the school, and his

and Matt Dorr's complaints to EEOC director Batey about Baker's outrageous racially-motivated attack, USD put out a press release stating that Ms. Johnson had asked for and received a release. In fact, he was terminated. USD lied to cover their termination of his NCAA contract.

Plaintiff requests this court allow leave to amend at this early stage in order to more fully plead facts omitted from the Complaint in the event the Court determines that insufficient facts exist supporting the granting if the 12(b)(6)

Dated: November 1, 2010 _____          __/S/_____
                                        MARY FRANCES PREVOST
                                        Attorney for Plaintiff
                                        TRUMAINE JOHNSON