1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  TRUMAINE JOHNSON,                                    CASE NO. 10CV0504-LAB (NLS)

12                                   Plaintiff,          **ORDER ON MOTION TO DISMISS**

13          vs.

14  UNIVERSITY OF SAN DIEGO, et al.,

15                                   Defendants.

16

17

18          Trumaine Johnson, a student at the University of San Diego, accuses the university,

19  its president (Lyons), its affirmative action director (Batey), its basketball coach (Grier), and

20  a public safety officer (Baker) of racial discrimination in violation of both United States and

21  California law.  An allegedly wrongful stop and arrest on February 8, 2009 appears to fuel

22  Johnson's accusations and be the ultimate source of his claims.

23          Johnson sues on his own behalf, and also as a representative of

24          all African Americans, professors and students alike, who since
            November 2008, have been or will be stopped while walking or
25          driving, detained, interrogated, or subjected to a search (either
            of person or vehicle) while on USD campus by USD security
26          guards.

27  (Compl. ¶ 34.) The Court has serious doubts as to the class certifiability of Johnson's claims,

28  *see, e.g.*, *White v. Williams*, 208 F.R.D. 123 (D.N.J. 2002) (denying class certification of

claims alleging racial profiling on the New Jersey Turnpike), but it will address that issue when, and if, Johnson presents it.  Now before the Court is the individual Defendants' motion to dismiss.

## I.    Causes of Action

Johnson brings sixteen causes of action against the Defendants.  It will help to list them.  The first six arise under United States law, the next four arise under California law, and the remaining six allege common law torts.

The first cause of action, which Johnson brings under 42 U.S.C. § 1983, alleges a violation of Title XI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which forbids racial discrimination in federally funded programs and activities.

The second cause of action, which is also based upon an alleged violation of § 2000d, seeks to impose liability under that statute directly, rather than under § 1983.  Johnson concedes that this cause of action can be dismissed against the individual Defendants, however, because "[t]he proper defendant in a Title VI case is an entity rather than an individual." *Farmer v. Ramsay*, 41 F.Supp.2d 587, 592 (D.Md. 1999).

The third cause of action, brought under § 1983, alleges a violation of the Fourteenth Amendment.

The fourth cause of action, brought under § 1983, alleges a violation of the Fourth and Fourteenth Amendments.

The fifth cause of action alleges a violation of 42 U.S.C. § 1981, which guarantees equal rights under the law.

The sixth cause of action alleges a conspiracy to violate Johnson's civil rights. Johnson concedes that this cause of action is barred by the applicable statute of limitations.

The seventh cause of action alleges a violation of Cal. Gov. Code § 11135, which is California's analogue to 42 U.S.C. § 2000d; it prohibits racial discrimination in programs and activities that are run or funded by the state.

//

//

10CV0504

1
2
3      The eighth cause of action alleges a violation of Article I, Section 7 of the California Constitution, which is roughly analogous to Section 1 of the Fourteenth Amendment to the United States Constitution.

4
5      The ninth cause of action also alleges a violation of the California Constitution: Article I, Section 13, which is analogous to the Fourth Amendment to the United States Constitution.

6
7      The tenth cause of action seeks relief under California Civil Code § 52.1 for the alleged violations of California law.  Section 52.1 is very similar to 42 U.S.C. § 1983.

8      The eleventh cause of action alleges the intentional infliction of emotional distress.

9      The twelfth cause of action alleges the negligent infliction of emotional distress.

10      The thirteenth cause of action alleges false imprisonment.

11      The fourteenth cause of action alleges assault and battery.

12      The fifteenth cause of action alleges negligent supervision and employment.

13
14      The sixteenth cause of action seeks relief in the form of a declaration that Defendants violated Johnson's rights under United States and California law.

15      **II.    Legal Standard**

16      A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal
17      sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   In
18      considering such a motion, the Court accepts all allegations of material fact as true and
19      construes them in the light most favorable to Johnson.  *Cedars-Sinai Med. Ctr. v. Nat'l*
20      *League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  To defeat a 12(b)(6)
21      motion, a complaint's factual allegations needn't be detailed, but they must be sufficient to
22      "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S.
23      544, 555 (2007).  However, "some threshold of plausibility must be crossed at the outset"
24      before a case can go forward.  *Id.* at 558 (internal quotations omitted).  A claim has "facial
25      plausibility when the plaintiff pleads factual content that allows the court to draw the
26      reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*
27      *Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a
28      'probability requirement,' but it asks for more than a sheer possibility that a defendant has
        acted unlawfully."  *Id.*

1   While the Court must draw all reasonable inferences in Johnson's favor, it need not

2   "necessarily assume the truth of legal conclusions merely because they are cast in the form

3   of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.

4   2003) (internal quotations omitted).  In fact, the Court does not need to accept any legal

5   conclusions as true.  *Iqbal*, 129 S.Ct. at 1949.  A complaint does not suffice "if it tenders

6   naked assertions devoid of further factual enhancement" (*Id.* (internal quotations omitted)),

7   nor if it contains a merely formulaic recitation of the elements of a cause of action.  *Bell Atl.*

8   *Corp.*, 550 U.S. at 555.

9   **III.   Discussion**

10   **A.   Johnson's Second, Sixth, and Thirteenth Causes of Action**

11   Johnson submits that his second, sixth, and thirteenth causes of action can be

12   dismissed.  They are **DISMISSED WITH PREJUDICE.**

13   **B.   Johnson's First, Third, Fourth, Eighth, and Ninth Causes of Action**

14   Defendants argue that Johnson's claims under § 1983 for alleged violations of 42

15   U.S.C. § 2000d, the Fourteenth Amendment, and the Fourth Amendment, along with his

16   claims under Sections 7 and 13 of Article I of the California Constitution, cannot be

17   maintained because the Defendants are not state actors.[1]   Johnson argues that the

18   individual Defendants are, in fact, state actors for the purposes of liability under § 1983 and

19   the California Constitution.

20   To state a claim for relief under section 1983, Johnson must plead two essential

21   elements: (1) that the individual defendants acted under color of state law; and (2) that they

22

23   _____

   [1] The Court has some doubts as to whether Johnson can seek relief under § 1983 for
24   an alleged violation of § 2000d when the individual Defendants cannot be liable under
   §2000d in the first place.  More than that, there is some indication in the case law that
25   plaintiffs cannot resort to § 1983 to assert Title VI rights.  *See Gensaw v. Del Norte County*
   *Unified School Dist.*, No. C 07-3009, 2008 WL 1777668 at *11 (N.D. Cal. Apr. 18, 2008).
26   Defendants don't raise this issue, however, so the Court will pass on it.  There also appears
   to be some disagreement in the case law on the question whether Title VI subsumes any
27   claims that may be brought under § 1983 for violation of the Fourteenth Amendment.
   *Compare Alexander v. Underhill*, 416 F.Supp.2d 999, 1007 (D. Nev. 2006) ("a remedy under
28   section 1983 for conduct within the scope of Title VI would be incompatible with Title VI")
   with *Gensaw*, 2008 WL 1777668 at *10 ("Title VI does not preclude § 1983 equal protection
   claims based on the same facts.").  Again, the defendants don't raise this issue, and so the
   Court will look past it.

1    caused him to be deprived of a right secured by the Constitution and laws of the United

2    States." *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).  A person acts under

3    color of state law if he "exercise[s] power 'possessed by virtue of state law and made

4    possible only because the wrongdoer is clothed with the authority of state law.'" *West v.*

5    *Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

6         Section 1983 "excludes from its reach merely private conduct, no matter how

7    discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)

8    (citation and internal quotation marks omitted).  Indeed, "[p]rivate parties are not generally

9    acting under state law."  Price v. Hawaii, 939 F.2d 702, 707–08 (9th Cir. 1991).    But there

10   are exceptions to this general rule, *see Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002),

11   and courts must engage in a fact-intensive inquiry to determine when they apply — and the

12   conduct of private parties amounts to government action for the purposes of § 1983.

13   *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983).  Over time, four tests have been

14   developed to facilitate this inquiry: (1) the public function test; (2) the joint action test; (3) the

15   governmental compulsion test; and (4) the governmental nexus test.   *See Sutton v.*

16   *Providence St. Joseph  Med. Ctr.*, 192 F.3d 826, 835–36 (9th Cir. 1999) (citing *Lugar v.*

17   *Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982)).

18        Johnson relies initially on the public function test, under which a private entity may

19   qualify as a state actor for § 1983 purposes where it exercises "powers traditionally

20   exclusively reserved to the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974).

21   It's hard to see, though, how Lyons, Batey, and Grier, in their respective capacities as USD

22   president, affirmative action director, and basketball coach, were exercising powers

23   traditionally reserved to California when Johnson's constitutional rights were allegedly

24   violated by safety officer Baker on February 8, 2009.  Indeed, it's hard to see how they were

25   even involved.  Johnson may respond that they weren't, but that they are liable for other

26   conduct: Lyons for continuing to employ and failing to train Baker (and "maintaining a custom

27   of segregation at the school"), Batey for dismissing a discrimination complaint that Johnson

28   filed after his arrest, and Grier for twice suspending Johnson from the basketball team (and

     defaming him in related press releases).  Be this as it may, Johnson still fails to explain how

their respective positions are "traditionally and exclusively governmental" for the purposes of satisfying the public function test and exposing them to liability under § 1983.  *Kirkley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (citing *Lee v. Katz*, 276 F.3d 550, 554-55 (9th Cir. 2002)).

The other problem with this rebuttal is that Johnson's actual claims, as pled, revolve entirely around his February 8, 2009 stop and arrest, even though he stitches into his complaint these other allegations of racial bias.  He may allege in his complaint that USD's commitment to diversity is abysmal (Compl. ¶¶ 18–20), and that Batey rejected his complaint that his arrest was racially motivated, and that Grier twice suspended him for "rules violations", but these are extraneous grievances that Johnson fails to incorporate into his causes of action.  The crux of Johnson's first cause of action — a § 1983 action for violation of Title VI — is that "[t]he policy employed by USD to approach, stop and question, and sometimes arrest students and employees of African American decent [sic] have [sic] a discriminatory impact on people of color traveling through California . . . ."  (Compl. ¶ 11.) His third cause of action, for violation of the Fourteenth Amendment, alleges that "defendants have caused plaintiff, and the class and subclass he seeks to represent, to suffer deprivation of their fundamental rights to liberty and to be free from unlawful searches, detentions, seizures and education on account of their race and/or national origin."  (Compl. ¶ 56.)  His fourth cause of action, for violation of the Fourth Amendment, alleges that the defendants "institute, authorize, tolerate, ratify, permit and acquiesce in policies, practices and customs of detentions, interrogations, searches and seizures without probable cause or reasonable, articulable suspicion of crime, in their provision of law enforcement services."  (Compl. ¶ 61.)  These charges fail to incorporate the allegedly wrongful conduct of Lyons, Batey, and Grier.

Failing the public function test, the individual defendants may also face § 1983 liability under the joint action test if "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity."  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995).  Private actors can be considered state actors, in other words, if they were "willful

10CV0504

1    participant[s] in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27

2    (1980); *see also Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205, 1211 (9th Cir.

3    2002).   A private party is liable under this theory only if its actions are "inextricably

4    intertwined" with those of the government.  *Id.* (citing *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d

5    498, 503 (9th Cir. 1996)).  Johnson fails to explain, or for that matter even properly allege,

6    how the individual Defendants joined with *another* state actor to violate his rights.  At best,

7    Johnson accuses Baker — not even a primary state actor himself — of violating his rights

8    on February 8, 2009, and the individual Defendants of exacerbating and compounding his

9    alleged injuries: Lyons for doing nothing about them, Batey for not taking Johnson's

10   discrimination complaint seriously, and Grier for suspending him from the basketball team.

11   But Johnson doesn't allege that Baker's conduct was obvious state action — as opposed to

12   that of a private actor performing a public function — and he doesn't allege that the individual

13   Defendants were "willful participants" in it.

14          Johnson's reliance on *McGrath v. Dominican Coll. of Blauvelt, New York*, 672

15   F.Supp.2d 477 (S.D.N.Y. 2009), is misplaced.  In that case, the plaintiff alleged that several

16   named individuals collaborated with a police detective, also an employee of the defendant

17   college, to brush sexual assaults under the rug.  *Id.* at 489.  There is no allegation here,

18   however, that Lyons, Batey, and Grier collaborated with Baker to stop and arrest Johnson,

19   or that they collaborated with one another to discriminate against him.  The Court is also not

20   moved by *Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107 (2d Cir.

21   2004), which Johnson cites for the principle that inaction or deliberate indifference in

22   response to a rights violation may constitute personal involvement in the violation that

23   triggers liability under § 1983.  This principle speaks to how state actors can be liable under

24   § 1983, not how private individuals can qualify as state actors in the first place.  Indeed, the

25   individual defendants in *Back* were state employees, so the question whether they were

26   state actors for the purposes of § 1983 wasn't really in dispute.  *Id.* at 122–23.  Likewise,

27   *Warwick v. Univ. of the Pac.*, No. C 08-3904, 2008 WL 5000218 at *5 (N.D. Cal. Nov. 21,

28   2008), is of no help to Johnson because the individual defendants (Miller and Romero) were

     undeniably state actors.  The passage that Johnson relies on concerns liability under § 1983

1   *assuming* an individual is a state actor.  His effort to place Grier, Baker, Batey, and Lyons
2   into one of four categories of individual liability under § 1983 is therefore misguided from the
3   start.

4           Johnson may believe that Lyons, Batey, and Grier are guilty of racial discrimination,
5   but the allegation is legally insignificant unless he can show they are state actors within the
6   ambit of § 1983.  Johnson must overcome the presumption that § 1983 does not reach the
7   conduct of private parties, and he cannot do that.  He has not alleged facts sufficient to show
8   that Lyons, Batey, and Grier, as a university president, affirmative action director, and
9   basketball coach, perform a traditionally public function, nor has he pleaded facts to show
10  that they acted jointly and consciously with a state actor to deprive him of his constitutional
11  rights.  Instead, he tells a story that may leave one with the impression that the University
12  of San Diego, for a host of reasons, is inhospitable to African Americans, but the racial
13  climate on campus, as manifested in the alleged conduct of the individual defendants, is not
14  "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).
15  Johnson's first, third, fourth, eighth, and ninth causes of action are **DISMISSED WITH**
16  **PREJUDICE** as against Lyons, Batey, and Grier.

17          Baker calls for a separate analysis because, as a public safety officer on campus, he
18  plausibly qualifies as a state actor under the public function test; law enforcement, unlike
19  university leadership, the promotion of diversity, and basketball coaching, is a function
20  historically performed by government.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 163
21  (1978) (leaving open question whether private police forces may be considered state actors).
22  Just as important, it's Baker's conduct that has the most direct relationship to Johnson's
23  grievances and claims; it was the February 8, 2009 stop and arrest, after all, that really set
24  this case into motion.  Public safety officers are the quintessential public-private actors
25  whose conduct can expose them to liability under § 1983.  *See, e.g.*, *United States v. Aukai*,
26  497 F.3d 955, 960–61 (9th Cir. 2007) (private security guards implementing airport security
27  program ordered by President are state actors); *see also West v. Atkins*, 487 U.S. at 49–51
28  (private correctional employees under contract with North Carolina amenable to suit under
    § 1983 for providing inadequate medical care).

10CV0504

1    Johnson argues that Baker is a state actor for § 1983 purposes under the public
2  function test, because "the City of San Diego has handed over enforcement of misdemeanor
3  crimes to USD security."  (Opp'n Br. at 6.)  He cites, as support, the following language from
4  USD's website:

5           The University of San Diego is a private university and is
           considered private property.  The USD Department of Public
6           Safety is charged with the primary responsibility of maintaining
           a safe campus environment at USD . . . . A written agreement is
7           also granted to USD Public Safety by the San Diego Police
           Department (SDPD) through a Memorandum of Understanding
8           that permits USD Public Safety to investigate misdemeanor
           crimes occurring on USD property.  However, the San Diego
9           Police Department is the primary reporting and investigating
           agency for any violent crime that might occur on USD property.

10  (Id.) Defendants point out, however, that the Memorandum of Understanding is far from a
11  delegation of police authority to USD.  Indeed, Johnson's complaint alleges that "Baker
12  called the San Diego Police Department and caused a citizen's arrest to be made against
13  Trumaine Johnson, claiming Mr. Johnson assaulted him."  (Compl. ¶ 26.)  Under the
14  Memorandum, the San Diego Police Department "will be the primary reporting and
15  investigating agency for ALL violent crimes (willful homicide, forcible rape, robbery,
16  aggravated assault) occurring on USD property."  (Barnett Decl. Ex. A.)  It further provides
17  that "[University of San Diego Department of Public Safety] may call upon [San Diego Police
18  Department] to assist with misdemeanor crimes occurring on USD property."  (Id.)  Finally,
19  it provides that "USDDPS will advise SDPD of any all violent crimes and assist if needed or
20  requested by SDPD."  (Id.).  Larry Barnett, the Assistant Vice President for Public Safety at
21  USD, declares that "members of the Public Safety department are private security and are
22  not sworn peace officers under California law."
23    Johnson leads with some cases that simply aren't analogous to this one.  For
24  example, in *Stokes v. Northwestern Mem'l Hosp.*, the court allowed that Northwestern
25  University police could be considered state actors, but only because the Code of the City of
26  Chicago "delegated all police powers" to them.  1989 WL 84554 at *2 (N.D. Ill. July 24, 1989)
27  ("Plaintiff has alleged, in essence, that Northwestern's police exercise all the powers of
28  Chicago police and that they are, de facto, the police force for a particular location, that is,

10CV0504

1    the buildings and public streets between them that comprise Northwestern's facilities."). The

2    Memorandum of Understanding between the San Diego Police Department and USD, by

3    contrast, simply is not a total delegation of police powers.  Similarly, in *Payton v. Rush-*

4    *Presbyterian St. Luke's Med. Ctr.*, the Court held that hospital security guards who were

5    "special Chicago police officers" could be regarded as state actors because a Chicago

6    ordinance delegated "all of the powers of the regular police patrol" to them.  184 F.3d 623,

7    630 (7th Cir. 1999) ("We conclude that for purposes of determining whether Freeman and

8    Murray could be state actors in this case, no legal different exists between a privately

9    employed special officer with full police powers and a regular Chicago police officer.").  The

10   court even noted that the power of making a citizen's arrest — which Johnson alleges Baker

11   exercised in this case — is not a power typically reserved to the police for the purposes of

12   the state actor analysis.  *Id.* at 629.[2]  The principle that emerges in *Stokes* and *Payton* —

13   and which does not help Johnson here — is that security or safety personnel are state actors

14   only "where the state delegate[s] its *entire* police power" to them.  *Johnson v. LaRabida*

15   *Children's Hosp.*, 372 F.3d 894, 898 (7th Cir. 2004) (internal quotations omitted) (emphasis

16   added).

17          Several courts have applied this very principle to campus security.  *See, e.g.*, *Boyle*

18   *v. Torres*, 756 F.Supp.2d 983, 993–95 (N.D. Ill. 2010) (University of Chicago police were

19   state actors pursuant to Illinois law giving them "the powers of municipal officers and county

20   sheriffs"); *Harper v. Franklin & Marshall College*, 2011 WL 2746644 at *5 (E.D. Penn. July

21   14, 2011) (mere fact that campus police were "appointed as Private Police under the

22   Pennsylvania Private Police Act" did not clothe campus police with state authority); *Scott v.*

23   *Northwestern University School of Law*, 1999 WL 134059 at *5 (N.D. Ill. Mar. 8, 1999)

24   (campus police officers were state actors because Illinois statute gave them the same

25   powers as municipal police officers); *Henderson v. Fisher*, 631 F.2d 1115, 1118 (3d Cir.

26   _____

27          [2] *See also Okununga v. Yakima County*, 2008 WL 2937560 at *4–6 (E.D. Wash. July
     23, 2008) (private security guards were not state actors because they had to call the local
28   police to make an arrest); *Hodges v. Holiday Inn Select*, 2008 WL 1945532 at *3–4 (E.D.
     Cal. May 1, 2008) (same).  *But see Walker v. City of Hayward*, 2008 WL 2357249 at *3–4
     (N.D. Cal. June 6, 2008) (refusing to dismiss § 1983 claim against restaurant security guard
     where plaintiff alleged substantial degree of cooperation with local police).

1  1980) (finding state action on the part of University of Pittsburgh police because "the
2  Pennsylvania legislature has delegated to the campus police . . . the very powers which the
3  municipal police force of Pittsburgh possesses").

4         Typically, the question whether private police or security officers are state actors is
5  one of fact that cannot be resolved at the motion to dismiss stage.  *Harper* at *5; *see also*
6  *Klunder v. Brown University*, 2011 WL 2790178 at *7 (D. R.I. July 13, 2011).  This case is
7  different because Johnson alleges no facts in the first place to even support the assertion
8  that Baker is a state actor, or that USD security was delegated police authority by the State
9  of California or City of San Diego.  He does argue in his opposition brief that "[t]he San Diego
10 Police Department, though a memorandum of understanding, relinquished its historically
11 exclusive right to investigate misdemeanor crimes on USD's campus to the USD security
12 guards," but that only hurts his argument.  The Memorandum of Understanding, at best,
13 establishes that the City of San Diego and USD's Department of Public Safety are
14 collaborators in law enforcement.  It is not, in any way, the kind of legislative or statutory
15 endowment of full police powers that gave rise to state action in cases like *Stokes*, *Payton*,
16 *Boyle*, *Harper*, *Scott*, and *Henderson.*  Johnson argues that, in the Memorandum, "the City
17 of San Diego has handed over enforcement of misdemeanor crimes to USD security," but
18 that's simply not true.  (Opp'n Br. at 6.)  The Memorandum merely says that USD's
19 Department of Public Safety can ask the San Diego Police Department for help with
20 misdemeanor crimes.  That is not a delegation of authority, and it does not cloak USD
21 campus safety officers with governmental authority.

22        Exposure to § 1983 liability arises "when private individuals or groups are endowed
23 by the State with powers or functions governmental in nature" such that they are "agencies
24 or instrumentalities of the State." *Evans v. Newton*, 382 U.S. 296, 299 (1966).  On the facts
25 pled, and on the Memorandum of Understanding that Johnson concedes is the operative
26 document specifying the role of USD police vis-a-vis San Diego Police, Baker cannot be
27 considered a state actor.   There is an insufficient nexus between Baker and the City of San
28 Diego such that his action "may be fairly treated as that of the State itself." *Villegas v. Gilroy*
   //

10CV0504

1   *Garlic Festival Ass'n*, 541 F.3d 950, 954–55 (9th Cir. 2008) (quoting *Brentwood Acad. v.*

2   *Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

3          Johnson's first, third, fourth, eighth, and ninth causes of action as against Baker are

4   **DISMISSED WITH PREJUDICE.**

5          **C.     Johnson's Fifth Cause of Action**

6          Johnson's fifth cause of action accuses all Defendants of violating 42 U.S.C. § 1981.

7   That civil rights statute provides:

8                  All persons within the jurisdiction of the United States shall have
                   the same right in every State and Territory to make and enforce
9                  contracts, to sue, be parties, give evidence, and to the full and
                   equal benefit of all laws and proceedings for the security of
10                 persons and property as is enjoyed by white citizens, and shall
                   be subject to like punishment, pains, penalties, taxes, licenses,
11                 and exactions of every kind, and to no other.

12  Specifically, Johnson alleges that "Defendants, acting under color of law and in concert with

13  one another, have denied plaintiffs their rights to full and equal benefit of the laws." (Compl.

14  ¶ 64.)   Defendants argue for dismissal on the ground that Johnson has failed to plead

15  sufficient facts under *Iqbal.*

16          Johnson does not specify which of the Defendants' alleged transgressions inspire his

17  § 1981 claim, but presumably the answer is all of them, because in stating his fifth cause of

18  action he simply incorporates and re-alleges all of his previous allegations.  Unfortunately,

19  none of those allegations support an inference of discrimination.  For example, Johnson

20  alleges that in December of 2008 he was falsely accused of vandalizing the car of a white

21  USD student, suspended from the basketball team, and defamed in the media by Grier.

22  (Compl. ¶¶ 21–24.)   Aside from the allegation that the car Johnson was accused of

23  vandalizing belonged to a white student, he pleads no facts to support the inference that his

24  treatment surrounding this episode was racially motivated — and that allegation by itself in

25  insufficient.

26          Similarly, Johnson alleges few facts to suggest that his February 8, 2009 stop and

27  arrest by Defendant Baker was racially motivated.  (Compl. ¶¶ 25–29.)  He alleges in a

28  completely conclusory manner that Baker profiled him before tackling, kneeing, and pepper

spraying him, but he offers no facts to support the profiling allegation. (Compl. ¶ 25.)  He

1   alleges that the police neglected to take the reports of favorable witnesses, but nothing about

2   this allegation suggests racial animus directed at Johnson.  He alleges that Baker fabricated

3   events and made false statements to the San Diego police, but again, nothing about that

4   allegation suggests racial animus.  The factual allegations become a bit clearer in Johnson's

5   opposition brief, in which he says that he was walking with a white basketball teammate,

6   Matt Dorr, and that he was attacked while Dorr was left alone.   There are a couple of

7   problems with this additional information.  First, Johnson does not say in his complaint that

8   he and Dorr were walking together when the episode with Baker took place; he merely says

9   that "Dorr witnessed the entirety of Baker's attack." (Compl. ¶ 26.)  Second, Johnson doesn't

10  allege any additional facts to suggest that he and Dorr were acting the same such that they

11  should have been treated the same.  He just makes the suspiciously cagey allegation that

12  he was with a white teammate, and Baker and the San Diego police left the white teammate

13  alone.  But he doesn't say what the stated basis was for *his* apprehension (or that there was

14  none), he doesn't say what he and Dorr were doing that would make their differential

15  treatment suspicious, and he doesn't state any facts that can rule out the possibility that

16  Baker had a reason for treating Johnson and Dorr differently.  Without these additional facts,

17  there cannot be an inference that racial animus was afoot.

18      Next to consider is Johnson's allegation that following the February 8, 2009 run-in with

19  Baker and the San Diego Police Department, he was "suspended for violating 'unspecified

20  team rules.'" (Compl. ¶ 30.)  The only basis Johnson offers for his charge of discrimination

21  is that Dorr "also violated 'team rules'" and was not suspended.  (*Id.*)  But here, again,

22  without additional factual allegations showing that the differential treatment was unjustified,

23  this allegation is too speculative under *Iqbal* to sustain a § 1981 claim.  There is surely more

24  to Johnson's story than the simple fact that he was suspended for violating the basketball

25  team's rules while Dorr was not, and Johnson should be able to allege a richer set of facts

26  than he does to support this discrimination claim.

27      Johnson also suggests that the rejection of his complaint against Baker by Affirmative

28  Action Director Batey was racially motivated.  (Compl. ¶ 32; Opp'n Br. at 10.)  But according

to Johnson, Dorr filed a complaint, too, and Dorr's complaint was also rejected.  Johnson

1   alleges no additional facts surrounding the rejection of his complaint that give rise to an

2   inference of discrimination, and the mere fact that his complaint was rejected is woefully

3   insufficient.  Were it otherwise, Batey would expose himself to a lawsuit every time he

4   rejected the complaint of a minority student.

5          Finally, Johnson alleges that on the same day he was arrested, several other campus

6   crimes involving non-African American students were treated less severely; whereas

7   Johnson was arrested, these other students merely received a "judicial referral." (Compl.

8   ¶ 32.)  Johnson does not, however, articulate any of the exact circumstances surrounding

9   his arrest to support the inference that he received disproportionate treatment.  Taking his

10  complaint at face value, the allegation appears to be that Baker simply committed a random

11  act of violence against him: "On February 8, 2009 Mr. Johnson was unlawfully stopped,

12  racially profiled, tackled to the ground by Defendant Baker, kneed in the back, pepper

13  sprayed in the face and then wrongfully arrested by Baker."  (Compl. ¶ 25.)  But Johnson

14  needs to either make that allegation explicitly or explain what the stated justification was for

15  his arrest in order to support the inference that it was baseless and discriminatory.

16         The bigger problem here is that Johnson simply misunderstands the standard for

17  pleading a claim that can survive a 12(b)(6) motion to dismiss.  He cites *Swierkiewicz v.*

18  *Sorena*, 534 U.S. 506 (2002), and argues he "need not set forth circumstances supporting

19  an inference of discrimination."  (Opp'n Br. at 10.)  The Supreme Court indeed held in

20  *Swierkiewicz* that "a complaint in an employment discrimination lawsuit [need] not contain

21  specific facts establishing a prima facie case of discrimination under the framework set forth

22  in *McDonnell Douglas*."  *Swierkiewicz*, 550 U.S. at 569.[3]  But the governing standard now

23  comes from *Iqbal*, which requires that Johnson "plead[ ] factual content that allows the court

24  to draw the reasonable inference that the defendant is liable for the misconduct alleged."

25  *Iqbal*, 129 S.Ct. at 1949.  For the reasons given above, the Court finds that he has not done

26  _____

27         [3] Defendants argue that *Swierkiewicz* was expressly overruled by *Bell Atlantic Corp.*
    *v. Twombly*, 550 U.S. 544.  (Reply Br. at 6 n. 4.)  Actually, the Supreme Court in *Twombly*

28  rejected the argument that its analysis ran counter to *Swierkiewicz*, noting that in that case
    it reversed the Second Circuit for imposing a heightened pleading standard, while in
    Twombly it was only requiring "enough facts to state a claim to relief that is plausible on its
    face."  *Id.* at 569.

                                          - 14 -                                    10CV0504

1   that.  To the contrary, the only reasonable inference the Court can draw is that Johnson isn't

2   telling the full story.   If he sincerely believes his treatment by the Defendants was

3   discriminatory, then he needs to allege more details surrounding his February 8, 2009 arrest

4   to show that the arrest and his subsequent treatment were racially motivated.  The Court will

5   allow him that opportunity.   Johnson's fifth cause of action is therefore **DISMISSED**

6   **WITHOUT PREJUDICE.**

7           **D.     Johnson's Tenth Cause of Action**

8           Johnson's tenth cause of action accuses the Defendants of violating Cal. Civ. Code

9   § 52.1, which prohibits the interference with constitutional or statutory rights by threatening,

10  intimidating, or coercive means.  *See Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (Cal. 1998)

11  ("section 52.1 does require an attempted or completed act of interference with a legal right,

12  accompanied by a form of coercion"); *see also Venegas v. County of Los Angeles*, 32

13  Cal.4th 820, 842 (Cal. 2004) (provisions of § 52.1 "are limited to threats, intimidation, or

14  coercion that interferes with a constitutional or statutory right").

15          The Court sees two problems with this cause of action.  First, Johnson doesn't specify

16  which rights, under the United States or California constitutions (or United States or

17  California laws), Defendants have interfered with.  He merely incorporates by reference all

18  of the preceding allegations in his complaint and then says "Defendants' above-described

19  conduct interfered and/or attempted to interfere with plaintiffs' exercise and/or enjoyment of

20  their rights as secured by the United States Constitution and/or California Constitution, in

21  violation of California Civil Code § 52.1."  (Compl. ¶¶ 78–79.)  Second, Johnson doesn't

22  allege how the Defendants' interfered with those rights by threats, intimidation, or coercion.

23  He claims Grier wrongfully suspended and defamed him, and that Batey rejected his

24  complaint against Baker, but he doesn't allege any facts to support the inference that this

25  conduct was a threatening, intimidating, or coercive interference with his rights.  Johnson's

26  attempt in his opposition brief to argue that he has alleged sufficient facts is completely

27  unsatisfying; in essence, he conflates the violations themselves, which he claims were

28  intimidating, with the exercise of constitutional and statutory rights that is protected by § 52.1.

    (*See* Opp'n Br. at 12.)  These are square peg allegations for a round hole of a statute.

Johnson's § 52.1 claims against Grier and Batey are therefore **DISMISSED WITH PREJUDICE**.  Johnson concedes he cannot maintain a § 52.1 claim against Lyons, and Defendants do not challenge Johnson's ability to state such a claim against Baker.

### E.    Johnson's Eleventh Cause of Action

Johnson accuses all individual Defendants of the intentional infliction of emotional distress, again by merely incorporating all previous allegations in his complaint and then just reciting the elements of the cause of action: "Defendants' above-described conduct was extreme and outrageous.  Said conduct was done intentionally and with conscious disregard of plaintiffs' rights, and directly and proximately caused plaintiffs humiliation, mental pain and suffering.  (Compl. ¶ 81.)

The intentional infliction of emotional distress requires conduct that is "so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society." *Bosetti v. U.S. Life Ins. Co. in City of New York*, 175 Cal.App.4th 1208, 1242 (Cal. Ct. App. 2009) (internal quotations omitted).  The Defendants do not dispute that Johnson has pled a plausible claim against Baker.  The question is whether he has pled one against Lyons, Grier, and Batey.  The Court finds that he has not and cannot.  Johnson's only argument is that his "arrest, suspension, and termination from the basketball team and the loss of his scholarship was racially motivated," from which he presumably wishes to urge the point that whatever is discriminatory is extreme and outrageous.  That argument has problems.  First, it does not in any way implicate Batey's rejection of Johnson's complaint.  Second, to the extent it might, at best Johnson alleges a genuine dispute with Batey's decision; he falls far short of alleging facts to show that the mere rejection of his complaint was extreme and outrageous.  Third, Johnson alleges no facts to suggest that Lyons, as President of USD, acted toward Johnson in a manner that was extreme and outrageous; in fact, he alleges no facts to show that she was even personally involved in Johnson's arrests and related suspensions from the basketball team.  Or, as Defendants put it, "[h]e does not allege that Lyons took any active role in anything having to do with him."  (Br. at 15.)  Fourth, as to Grier, Johnson again only alleges facts sufficient to show that he disputes the basketball coach's decisions to suspend him from the team for rules violations.  That is insufficient.

1   *See Bosetti*, 175 Cal.App.4th at 1242 (genuine disputes foreclose possibility of extreme and
2   outrageous conduct).

3        Johnson's intentional infliction of emotional distress claim against Baker can stand.
4   His claims against Lyons, Grier ,and Batey cannot, and they are **DISMISSED WITH**
5   **PREJUDICE**.

6        **F.    Johnson's Twelfth Cause of Action**

7        Johnson accuses all individual Defendants of the negligent infliction of emotional
8   distress.  As with his cause of action for the *intentional* infliction of emotional distress,
9   Johnson doesn't plead the particular facts underlying the claim.  He merely incorporates and
10  realleges all preceding paragraphs and then states conclusorily "Defendants above-
11  described conduct constituted a breach of defendants' duty of care to plaintiffs to ensure that
12  defendants did not cause unnecessary or unjustified harm to plaintiffs.  It was reasonably
13  foreseeable to all defendants that a breach of that duty by defendants would cause
14  emotional distress to plaintiffs."  (Compl. ¶ 83.)

15       The negligent infliction of emotional distress is not an independent tort, but a tort of
16  negligence to which the traditional elements of duty, breach of duty, causation, and damages
17  apply.  *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 588 (Cal.
18  1989).  Johnson makes no effort to plead those elements, or, more specifically, the factual
19  bases for them.  Perhaps he can.  Perhaps Johnson's argument is that Grier owed him a
20  duty of care in his suspension decisions, and that Grier failed to fulfill that duty by rushing
21  to judgment in his suspension decisions and announcing Johnson's suspension in a manner
22  that was defamatory.  Perhaps Johnson's argument with respect to Batey is similar — that
23  his complaint against Baker was owed a duty of reasonable care, and that Batey dismissed
24  it for nefarious reasons that he should have known would cause Johnson emotional distress.
25  But whatever the argument, Johnson needs to allege the requisite facts; he can't simply rely
26  on the conclusory assertion that he was discriminated against, and the frivolous argument
27  that because discrimination is bad he must be entitled to relief under any number of legal
28  theories.

//

10CV0504

1   Johnson's negligent infliction of emotional distress claims against Grier and Batey are

2   **DISMISSED WITHOUT PREJUDICE.**   The Court sees no basis for a negligent infliction of

3   emotional distress claim against Lyons, and that claim is **DISMISSED WITH PREJUDICE**.

4   The Defendants do not dispute that he has stated a claim against Baker, so that claim

5   survives their motion to dismiss.

6   **G.      Johnson's Fifteenth Cause of Action**

7   Johnson accuses Lyons of negligently employing and supervising Baker.  He alleges

8   that "Lyons as an executive officer of USD knew or in the exercise of due care should have

9   known that Defendant[ ] Baker . . . had a propensity, character trait, and practice, while

10   purporting to act under color of law, for bigotry and/or violence, and/or dishonesty and/or

11   prevarication."  (Compl. ¶ 92.)  He also alleges that Lyons "negligently, carelessly and

12   recklessly, hired, employed, retained and failed to properly supervise, train and control

13   Baker."  (Compl. ¶ 93.)

14   A negligent hiring claim arises when an employer had some antecedent reason to

15   believe that hiring a particular individual would create an undue risk of harm.  *Federico v.*

16   *Superior Court*, 59 Cal.App.4th 1207, 1213 (Cal. Ct. App. 1997).  An employer's duty of

17   reasonable care is breached "only when the employer knows, or should know, facts which

18   would warn a reasonable person that the employee presents an undue risk of harm to third

19   persons *in light of the particular work to be performed.*"  *Id.* at 1214.

20   The sole basis for Johnson's negligent hiring claim is that Baker was previously a

21   zookeeper at the San Diego Zoo.  This is woefully inadequate.  It does not even begin to

22   allow for "the reasonable inference that the defendant is liable for the misconduct alleged."

23   *Iqbal*, 129 S.Ct. at 1949.  It would be different if Johnson could allege that Baker had proven

24   himself to be a loose cannon in a prior job that was comparable to his work as a USD

25   security officer, but the mere fact that he was previously a zookeeper is insufficient as a

26   matter of law to support the inference that it was negligent of USD to hire him in the first

27   instance.  This claim is **DISMISSED WITH PREJUDICE**.

28   //

//

10CV0504

1  **IV.   Conclusion**

2       Some of Johnson's claims survive the Defendants' motion to dismiss, but most do not.

3       Johnson's second, sixth, and thirteenth causes of action are **DISMISSED WITH**

4  **PREJUDICE**.  He concedes they should be.

5       His first, third, fourth, eighth, ninth, and fifteenth causes of action are also

6  **DISMISSED WITH PREJUDICE**.

7       His tenth and eleventh causes of action are **DISMISSED WITH PREJUDICE** as to

8  Lyons, Grier, and Batey.  They survive as to Baker.

9       His fifth cause of action is **DISMISSED WITH PREJUDICE**.

10      His twelfth cause of action is **DISMISSED WITH PREJUDICE** as to Lyons,

11 **DISMISSED WITHOUT PREJUDICE** as to Grier and Batey, and survives as to Baker.

12      His fourteenth cause of action against Baker survives; the Defendants do not

13 challenge it.

14      Johnson's counsel has withdrawn from the case, and he has indicated a willingness

15 to proceed pro se.  He has three weeks to amend his complaint from the date this Order is

16 entered.  If he fails to do so, the claims that have been dismissed without prejudice will be

17 dismissed with prejudice and only his tenth, eleventh, twelfth, and fourteenth causes of

18 action against Baker will remain.  Defendants should notify the Court telephonically if, at the

19 three-week mark, Johnson has failed to amend his complaint.

20      The Defendants' motion to strike Johnson's class action demand is **DENIED**

21 **WITHOUT PREJUDICE**.  It may be that none of the remaining claims may even proceed on

22 a class-wide basis, but the Court does not rule out this possibility now, nor does it rule out

23 the possibility that Johnson may retain counsel to help him litigate this case going forward.

24 Once Johnson amends his complaint and it is clear whether he has counsel, and what

25 claims he is asserting, the Defendants may renew their motion to strike.

26 //

27 //

28 //

10CV0504

1        Finally, the City of San Diego and Christina Berg's motion for leave to file an amended

2   answer is **GRANTED**, although they should wait for Johnson to file an amended complaint

3   before filing their amended answer.

4        **IT IS SO ORDERED**.

5   DATED:  September 15, 2011

6

7                                              **HONORABLE LARRY ALAN BURNS**
                                               United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10CV0504